# 上海康泰生化科技有限公司
## SHANGHAI CONTAKE CHEMICALS CO.,LTD.
### 售 货 确 认 书
### SALES CONFIRMATION

| File No.:SHRG060002 |
| Date: 20-MAR-2006 |

**THE SELLER:**
SHANGHAI CONTAKE CHEMICALS. CO., LTD.
6F RONGZE MANSION No.1100 DINGXI ROAD,
SHANGHAI 200050 P.R.CHINA
TEL: +86-21-62139990
FAX: +86-21-62138299

**THE BUYER:**
GREN AUTOMOTIVE INC.
400 D Pierce Street,Somerset,NJ 08873,U.S.A.
Tel: 732-356-5118
Fax:732-356-6709

下列签字双方同意按以下条款达成交易:
The undersigned Sellers and Buyers have agreed to close the following transactions according to the terms and conditions stipulated below:

| 品名及规格 Commodities & Specifications | 数量 Quantity | 单价 Unit Price | 金额 Amount |
|---|---|---|---|
| R-134a 99.95% MIN IN 13.6KG CYLINDERS COMPLY WITH STANDARD ARI-700 1999 HCFC1122+HCFC1326+HCFC1121+HCFC133 +HCFC1131+HCFC133A    40PPM  MAX | 3020 3,400.00CYLINDERS 46,,512.00KGS | USD76.00/CYLINDER | USD259,920.00 |
| | | TOTAL. | USD259,920.00 |

总值 TOTAL VALUE:USD259,920.00
装运期限 DATE OF SHIPMENTS: BEFORE MARCH 30,2005
可否分批装运 PARTIAL:ALLOWED
装运方式 TERM OF SHIPMENT: FOB SHANGHAI
起运地 LOADING: SHANGHAI
目的地 DESTINATION:LOS ANGELES U.S.A.
付款方式 PAYMENT: 20% T/T AFTER WE ACCEPT THE CYLINDERS, 80% T/T TRANSFERRED TO OUR ACCOUNT 10 DAYS BEFORE THE ARRIVAL OF THE SHIPMENT.(THE PREPAYMENT WILL BE CALCULATED ACCORDING TO EACH CONFIRMED SHIPMENT)

一段条款 GENERAL TERMS:
1. 质地、重量、尺寸、花型、颜色均允许合理差异,对合理范围内差异提出的索赔概不受理。
   Reasonable tolerance in quality, weight, measurements, designs and colors are allowed, for which no claims will be entertained.
2. 买方应不折不扣承担定货的后果承担全部责任。(1)使用所方的特定装潢、花型、图案、商标、注牌等等。(2)不提供供生产所需的设备或其他细则。
   (3) 不按时开立信用证。(4)信用证修改与有货确认书不相符的不及时修改。
   Buyer is to assume full responsibilities for any consequences arising form (1) The use of packing, designs, patterns, brands or hang tags etc. made to orders. (2) Late submission of specification or any other details necessary for the execution of this Sales Confirmation. (3) L/c establishment of L/C. (4) Late amendment to L/C inconsistent with the provisions of this Sales Confirmation.
3. 信用证应注意事项:(1)买方信用证由,一般请勿指定船公司、货运代理及承担保险公司名称。(2)信用证有效期应规定在最后装运日期后至少15个工作日,在中国到期,信用证金额和数量应允许增减5%,以便支方收汇。(3)请注意用不可撤销的信用证、不可加注说和变更于总发方同意的任何条款。(5)买方应在信用证内注明本合同号码。
   Letter of Credit: (1) The Buyer is requested to refrain from SPECIFYING ANY PARTICULAR SHIPPING LINE, NAME OF STEAMER, or INSURANCE COMPANY in the Letter of Credit. (2) To facilitate negotiation of the credit by the seller the validity of the Letter of Credit shall be so stipulated as to remain valid for at least 15 working days, expiring in China, after the last day of shipment and the amount of credit and quantity(ies) shall allow plus or minus 5%. (3) The Buyer is requested always to stipulate in the Letter of Credit that TRANSHIPMENT AND PARTIAL SHIPMENTS ARE ALLOWED. (4) In the credit opened by the Buyer, no terms & conditions should be added or altered without the Seller's previous consent. (5) The Buyer is requested always to state the NUMBER OF THIS CONFIRMATION in the Letter of Credit.
4. 装运:(1)商品可由中国任何口岸装出,提单日期作为装运日期。(2)受更目的地,应事先经卖方同意,因此增加的运费等,应由买方承担。
   (1) Shipment may be made from any Chinese ports, the date of Bill of Landing shall be taken as the date of shipment. (2) Any change of destination should be agreed by the Seller beforehand. Extra freight and/or insurance premium thus incurred are to be borne by the Buyer.
5. 凡有对装运的货物的数量进行索赔,必须在货到目的地30天内提出。并附对由买方提供经卖方认可的检验机构出具有关质量的检验报告。
   Claims, if any, concerning the goods shipped should be filed within 30 days after arrival at destination. The Buyer must submit competent inspection report issued by agencies approved by the Seller.
6. 如因人力不可抗拒的事故造成延期或无法交货,卖方不负任何责任。
   In the event of force Majeure or any other contingencies beyond the Seller's control, the Seller shall not be held responsible for late delivery or non-delivery of the goods.
7. 仲裁:凡因执行本售货确认书或有关货确认书所发生的一切争端由双方协商解决,如协商不能得到解决,应提交北京中国国际贸易促进委员会对外贸易仲裁委员会根据"中国国际贸易促进委员会对外贸易仲裁委员会的仲裁程序暂行规则"进行仲裁,仲裁裁决是终局的,对双方都有约束力。
   Arbitration: All disputes in connection with this Agency Agreement, or the execution thereof, shall be settled by negotiation. In case no settlement can be reached, the case under dispute shall then be submitted for arbitration to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade  Beijing in accordance with the "Provisional Rules of Procedure of the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade". The decision by the Commission shall be accepted as final and binding upon both parties.
8. 请买方在收到本售货确认书后十天内签章一份留存,另份寄回卖方存查,如在此期限内不提出异议,则应为买方已接受本合同所规定之全部条款;本售货确认书即生效。
   The Buyer is requested to sign and return one original copy to the seller for file immediately upon receipt of this Confirmation. Should the Buyer fail to do so within 10 days after arrival of this Confirmation at the Buyer's end, it shall be presumed that the Buyer has tacitly accepted all the terms and conditions set forth in this Confirmation.

买方(THE BUYER)                                    卖方(THE SELLER)

**EXHIBIT**

**A**

# 上 海 康 泰 生 化 科 技 有 限 公 司
## SHANGHAI CONTAKE CHEMICALS CO.,LTD.
# 售 货 确 认 书
## SALES CONFIRMATION

File No.:SHRG060003
Date: 27-MAR-2006

THE SELLER:
SHANGHAI CONTAKE CHEMICALS. CO., LTD.
6F RONGZE MANSION NO.1100 DINGXI ROAD,
SHANGHAI 200050 P.R.CHINA
TEL: +86-21-62139990
FAX: +86-21-62138299

THE BUYER:
GREN AUTOMOTIVE INC.
400 D Pierce Street,Somerset,NJ 08873,U.S.A.
Tel: 732-356-5118
Fax:732-356-6709

下列签字双方同意按以下条款达成交易:
The undersigned Sellers and Buyers have agreed to close the following transactions according to the terms and conditions stipulated below:

| 品名及规格 Commodities & Specifications | 数量 Quantity | 单价 Unit Price | 金额 Amount |
|---|---|---|---|
| R-134a 99.95% MIN IN 13.6KG CYLINDERS COMPLY WITH STANDARD ARI-700 1999 HCFC1122+HCFC1326+HCFC1121+HCFC133 +HCFC1131+HCFC133A   40PPM   MAX | 2,280.00CYLINDERS 31,008.00KGS | USD76.00/CYLINDER | USD173,280.00 |
| | | TOTAL: | USD173,280.00 |

总值 TOTAL VALUE: USD259,920.00
装运明期 DATE OF SHIPMENTS: BEFORE APR 5,2005
可分批装运 PARTIAL:ALLOWED
装运方式 TERM OF SHIPMENT:   FOB SHANGHAI
起运港 LOADING: SHANGHAI
目的地 DESTINATION:SOMERSET/HOLLYWOOD U.S.A.
付款方式 PAYMENT: 20% T/T AFTER WE ACCEPT THE CYLINDERS, 80% T/T TRANSFERRED TO OUR ACCOUNT 10 DAYS BEFORE THE ARRIVAL OF THE SHIPMENT.(THE PREPAYMENT WILL BE CALCULATED ACCORDING TO EACH CONFIRMED SHIPMENT)

一般条款 GENERAL TERMS:
1. 原地、重量、尺寸、花型、颜色均允许合理差异，对合理范围内差异提出的索赔概不受理。
   Reasonable tolerance in quality, weight, measurements, designs and colors are allowed, for which no claims will be entertained.
2. 买方对下列各点所造成的后果承担全部责任。(1)使用买方的特定标误。花型、图案、商标、挂牌等等。(2)不及时提供生产所需的规格或其他细则。
   (3)不按时开立信用证。(4)信用证条款与本确认书不相符等不及时修改。
   Buyer is to assume full responsibilities for any consequences arising form: (1) The use of packing, designs, patterns, brands or hang tags etc. made to orders. (2) Late submission of specification or any other details necessary for the execution of this Sales Confirmation. (3) Late establishment of L/C. (4) Late amendment to L/C inconsistent with the provisions of this Sales Confirmation.
3. 信用证延续事项:(1)买方恪用证时，一般请勿指定船公司、货运代理及承担保险公司名称。(2)信用证有效期应规定在最后装运日期后至少15个工作日。在中国到期。信用证金额和数量应允许增减5%，以便买方收汇。(3)请在信用证内规定允许转船及分批装运。(4)买方所开的信用证，不得加注和变更未经本方同意的任何条款。(5)买方应在信用证内注明本合同号码。
   Letter of Credit: (1) The Buyer is requested to refrain from SPECIFYING ANY PARTICULAR SHIPPING LINE, NAME OF STEAMER, or INSURANCE COMPANY in the Letter of Credit. (2) To facilitate negotiation of the credit by the seller the validity of the Letter of Credit shall be so stipulated as to remain valid for at least 15 working days, expiring in China, after the last day of shipment and the amount of credit and quantity(ies) shall allow plus or minus 5%. (3) The Buyer is requested always to stipulate in the Letter of Credit that TRANSHIPMENT AND PARTIAL SHIPMENTS ARE ALLOWED. (4) In the credit opened by the Buyer, no terms & conditions should be added or altered without the Seller's previous consent. (5) The Buyer is requested always to state the NUMBER OF THIS CONFIRMATION in the Letter of Credit.
4. 装运:(1)商品可在中国任何口岸装出，提单日期作为装运日期。(2)变更目的地，应事先经买方同意，因此增加的运保费，由买方承担。
   (1) Shipment may be made from any Chinese ports, the date of Bill of Landing shall be taken as the date of shipment. (2) Any change of destination should be agreed by the Seller beforehand. Extra freight and/or insurance premium thus incurred are to be borne by the Buyer.
5. 凡对对装运的货物质量提出索赔者，必须在装到目的地30天内提出，并同时由买方提供经卖方认可的检验机构出具的检验报告。
   Claims, if any, concerning the goods shipped should be filed within 30 days after arrival at destination. The Buyer must submit competent inspection report issued by agencies approved by the Seller.
6. 如因人力不可抗拒的事故造成延期或无法交货，卖方不负任何责任。
   In the event of force Majeure or any other contingencies beyond the Seller's control, the Seller shall not be held responsible for late delivery or non-delivery of the goods.
7. 仲裁:凡因执行本售货确认书或有关售货确认书所发生的一切争端应由双方协商解决。如协商不能得到解决，应递交北京中国国际贸易促进委员会对外贸易仲裁委员会根据"中国国际贸易促进委员会对外贸易仲裁程序暂行规则"进行仲裁，仲裁裁决是局的，对双方都有约束力。
   Arbitration: All disputes in connection with this Agency Agreement, or the execution thereof, shall be settled by negotiation. In case no settlement can be reached, the case under dispute shall then be submitted for arbitration to the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade - Beijing in accordance with the "Provisional Rules of Procedure of the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade". The decision by the Commission shall be accepted as final and binding upon both parties.
8. 请买方立收到本售货确认书后十天内签退一份给本方。如在此期限内不退买方者，应视为买方已接受本合同所规定之全部条款；本售货确认书即生效。
   The Buyer is requested to sign and return one original copy to the seller for file immediately upon receipt of this Confirmation. Should the Buyer fail to do so within 10 days after arrival of this Confirmation at the Buyer's end, it shall be presumed that the Buyer has tacitly accepted all the terms and conditions set forth in this Confirmation.

买方（THE BUYER）

卖方（THE SELLER）

# 公 证 书

## 中华人民共和国上海市东方公证处

EXHIBIT

B

# 中国国际经济贸易仲裁委员会

# 裁决书

申请人：上海康泰生化科技有限公司

地　　址：上海市长宁区定西路 1100 号辽油大厦 6 楼

仲裁代理人：杨松生

被申请人：GREN AUTOMOTIVE INC.

地　　址：625A, Pierce Street, Somerset, NJ 08873, U.S.A.

仲裁代理人：胡世鉴、安涛

北京

二〇〇七年十月二十六日

# 裁 决 书

（2007）中国贸仲京裁字第 0498 号

中国国际经济贸易仲裁委员会（下称"仲裁委员会"）依据申请人上海康泰生化科技有限公司（下称"申请人"）与被申请人 GREN AUTOMOTIVE INC.（下称"被申请人"）之间于 2006 年 3 月 27 日签订的 SHRG060002 号《售货确认书》（以下称 "02 号合同"）、2006 年 3 月 20 日签订的 SHRG060003 号《售货确认书》（以下称 "03号合同"）中仲裁条款及申请人于 2007 年 3 月 12 日向仲裁委员会提交的书面仲裁申请，受理了关于前述合同项下的本争议仲裁案。本案的案件编号为 G20070177。

本案仲裁程序适用自 2005 年 5 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（下称"《仲裁规则》"）

2007 年 3 月 19 日，仲裁委员会秘书局以特快专递方式分别向申请人和被申请人寄送了本案的仲裁通知、《仲裁规则》和仲裁委员会《仲裁员名册》，并将申请人提交的仲裁申请书及其附件转给了被申请人。

2007 年 6 月 5 日，被申请人向仲裁委员会提交了"答辩状"及附件。

申请人选定安红旗先生担任本案仲裁员。被申请人选定周忠海先生担任本案仲裁员。由于申请人和被申请人未在规定期限内共同选定或共同委托本会主任指定首席仲裁员，本会主任根据《仲裁规则》之规定指定严思忆女士担任本案首

1

席仲裁员。上述三位仲裁员于 2007 年 5 月 24 日组成仲裁庭，共同审理本案。

仲裁庭经商仲裁委员会秘书局决定于 2007 年 7 月 3 日在北京开庭审理本案。仲裁委员会秘书局于 2007 年 6 月 6 日以特快专递方式分别向双方当事人寄送了本案组庭通知和开庭通知。

2007 年 7 月 3 日，仲裁庭在北京开庭审理本案。双方当事人均委派仲裁代理人出庭。庭审中，申请人的代理人及被申请人的代理人就本案的事实和法律问题陈述了自己的主张，回答了仲裁庭的提问，并出示了相关证据的原件，仲裁庭组织双方当事人对证据进行了质证。

2007 年 7 月 11 日，申请人向仲裁委员会提交了"仲裁补充申请书"，申请将当事人双方对 SHRG060001 号《售货确认书》（以下称"01 号合同"）的履行情况纳入本案审理范围之中。

2007 年 7 月 12 日，申请人向仲裁委员会提交了"收款情况说明"及附件。

2007 年 7 月 16 日，仲裁委员会秘书局以特快专递的方式向被申请人转交了上述"仲裁补充申请书"和"收款情况说明"及附件。

仲裁庭同意了申请人将 01 号合同履行情况纳入本案审理范围的请求，并决定于 2007 年 8 月 8 日在北京第二次开庭审理本案。2007 年 7 月 24 日，仲裁委员会秘书局以特快专递的方式分别向双方当事人寄送了本案开庭通知。

2007 年 8 月 6 日，被申请人向仲裁委员会秘书局提交了

2

"仲裁反请求书"及"关于给予答辩期并准予提起反请求的请求"。

2007年8月8日,仲裁庭在北京开庭审理本案。双方当事人均委派仲裁代理人出庭。庭前仲裁委员会秘书局将被申请人提交的"仲裁反请求书"及"关于给予答辩期并准予提起反请求的请求"转交给申请人。庭审中,双方的代理人就本案的事实和法律问题陈述了自己的主张,回答了仲裁庭的提问,并出示了相关证据的原件,仲裁庭组织双方当事人对证据进行了质证。

仲裁庭经审理查明,被申请人在其"仲裁反请求书"中提出的请求所依据的合同不是本案申请人提出仲裁申请所依据的合同,因此,仲裁庭决定对被申请人的反请求不予受理。2007年8月17日,仲裁委员会秘书局以特快专递方式分别向双方当事人寄送了仲裁庭不予受理被申请人反请求的决定。

有关本案的所有仲裁文件,已由仲裁委员会秘书局依照仲裁委员会仲裁规则的规定送达双方当事人。

本案现已审理终结,仲裁庭经合议,以多数意见作出本裁决。

现将本案案情、仲裁庭多数意见和裁决内容分述如下:

# 一、 案 情

2006年3月20日,申请人与被申请人签订了02号合同,

3

双方在合同中约定，由申请人向被申请人出售 R－134a 货物 3420 罐，每罐 76 美元，总价款 259,920 美元，FOB 上海，付款方式为先预付 20% 定金、其余 80% 的款项在货到港口 10 天前付清。2006 年 3 月 27 日，申请人与被申请人签订了 03 号合同，除约定供货数量为两个货柜外，其余单价、付款方式等内容均与 02 号合同一样。

　　申请人称：

　　上述合同签订后，因一个集装箱只能装 1140 罐，申请人分二批计 3 个货柜将上述 02 号合同项下的货物全部发给了被申请人，但被申请人仅支付 20% 定金，其余 80% 的货款未支付。在被申请人未按合同约定继续支付其他款项的情况下，应被申请人再三要求，申请人又发给被申请人一个货柜的货物。被申请人分三次共提取申请人发给被申请人 4 个货柜的货物计 4560 罐，总价值为 346,560 美元，但仅支付给申请人货款（定金）519,84 美元，至今尚拖欠申请人货款 294,576 美元。在合同约定的期间内，被申请人未对货物质量提出任何异议，更未提出质量异议所要求的检验报告。申请人多次通过电话、电子邮件、传真等方式向被申请人催讨货款，被申请人先是推托，后又不予理睬。

　　申请人认为被申请人拒不支付货款的行为已经构成了严重违约，基于上述事实和理由，提出如下仲裁请求：

　　1、被申请人向申请人支付货款 294,576 美元；

　　2、被申请人赔偿申请人因违约造成的损失 17,300 美元（暂算至 2007 年 3 月底，逾期还应每天加上 49 美元计算）；

　　3、被申请人向申请人支付 7,350 美元用以补偿申请人花

费的律师费；

4、被申请人向申请人偿付为办理本案所支出的差旅费；

5、被申请人承担本案仲裁费。

针对申请人的主张，被申请人答辩称：

被申请人已依约履行了付款义务，分别于 2006 年 3 月 23 日支付 51,984 美元，2006 年 4 月 3 日支付 180,000 美元，2006 年 4 月 12 日支付 80,000 美元，2006 年 4 月 26 日支付 44，608 美元。被申请人认为，申请人的仲裁请求缺少事实根据和法律依据，应予全部驳回并请求申请人承担被申请人的律师费及仲裁费用。

针对被申请人的答辩意见，申请人在其提交的《情况补充说明》中称：

双方发生供货往来不仅仅局限于本案申请仲裁的 02 号和 03 号这两份合同，早在 2005 年双方就发生过供货往来。双方曾于 2006 年 2 月 11 日签订了 01 号合同，约定供货 5700 罐（5 个货柜），单价 83.5 美元，总价款计 475,950 美元，2006 年 2 月 15 日被申请人收到申请人预付的 20% 的定金计 95,190 美元，之后，申请人分三批向被申请人发出了 01 号合同项下的全部货物。申请人于 2006 年 3 月 22 日收到被申请人支付的一个货柜的剩余 80% 的货款计 76,152 美元，其余四个货柜剩余的 80% 货款合计 304,608 美元由被申请人分成三批在 2006 年 4 月份支付：申请人于 2006 年 4 月 4 日收到 180,000 美元、4 月 14 日收到 80,000 美元、4 月 29 日收到余款 44,608 美元。01 号合同货款还未全部支付结束，双方就于 2006 年 3 月 20 日和 3 月 27 日又分别签订了 02 号和

03 号两份合同，即仲裁申请书涉及的事实。被申请人在 2006 年 4 月 26 日前支付的款项中，只有申请人于 3 月 24 日收到的 51,984 美元，才是被申请人按 02 号合同的约定支付的 20％预付货款。上述事实除了有双方约定货到后再付款的合同外，还有被申请人负责人刘劲发给申请人的承认其拖欠申请人货款的电子邮件作为佐证，特别是 2006 年 4 月 28 日，被申请人确认已经收到运至 LOS ANGELES 的 2 个货柜的货物并承诺将于 2006 年 5 月 15 日前付清货款的还款公函附件更能说明事实。申请人认为，被申请人在答辩状中称于 2006 年 4 月 26 日之前已将全部货款支付完毕与被申请人于 2006 年 4 月 28 日承诺将在 2006 年 5 月 15 日前付清全部货款自相矛盾。而且被申请人于 2006 年 4 月份支付的三笔货款共计 304,608 美元，也与 01 号合同余欠的货款数额完全相符。

申请人认为，申请人与被申请人于 2006 年 2 月 11 日签订的 01 号合同的供货、付款义务双方已经履行完毕，故，申请人未在仲裁申请书中提及这一情况，但现被申请人答辩称，在 2006 年 4 月份被申请人分三次支付给申请人的 30 余万美元货款是履行后两份合同即支付的是 02 号和 03 号合同项下的货款，为此，申请人已向仲裁庭补交了一系列相关证据证明这 30 万余美元是被申请人履行 01 号合同的付款义务，且其数额与 01 号合同完全相符。被申请人 2006 年 4 月 12 日发给申请人的电子邮件中承认欠申请人款项的数额也与申请人的主张相符。2006 年 4 月 29 日电子邮件内容证明了 44,608 美元是被申请人支付以前合同的余欠尾款，同时，被申请人确认已经收到 2006 年 3 月 29 日航班 2 个货柜的货款并将于 2006 年 5 月 15 日前付清货款。同时，被申请人在

6

2006 年 6 月 13 日、7 月 5 日以及 6 月 6 日的电子邮件中说明，被申请人将努力解决余欠货款并要申请人提供应付帐款明细，被申请人还承诺，在以后申请人供货的过程中逐渐降低被申请人欠款的额度并将市场形势不好的欠款原因向申请人作出了说明。申请人还提交了招商银行上海分行给申请人的三份汇入汇款通知书复印件。申请人认为，上述所列证据能够佐证被申请人至今尚欠申请人近 30 万美元货款的事实，但由于双方之间确实存在前后合同供货付款滚动结算的事实，而 01 号合同又不在本案仲裁申请的范围内，因此，被申请人提出异议的这 30 万余美元究竟付的是 01 号合同的款项还是 02 号、03 号合同的款项就成为本案双方的争议焦点，也因此，申请人对原仲裁请求提出更改，将双方对 01 号合同约定的有关义务履行的事实纳入本案的审理范围。

## 二、 仲裁庭多数意见

### （一）适用法律

鉴于本案合同未约定法律适用条款，而本案双方当事人的营业地分处在中国和美国，该两国均为《联合国国际货物销售合同公约》（以下简称"《公约》"）的缔约国。因此，仲裁庭决定本案适用《公约》。《公约》未作约定的，参照国际贸易的相关法律和国际惯例。

### （二）本案范围内的合同及本案的审理范围

经庭审查明，本案双方当事人在 2005 年就有贸易往来并有具体交易，在交易中，双方通常的做法是连续多次签约，

但非"一单一清"，而是采用"滚动交货"、"滚动付款"，即在合同签订后，先由被申请人向申请人支付部分定金，然后申请人发货，在货物到达目的地并由被申请人受领货物后，被申请人再在合同约定的一定期限内向申请人支付剩余货款，直到将各合同的货款全部付清为止。双方当事人对此包括对本案所涉合同的上述做法没有争议并当庭向仲裁庭确认了这一事实。

在第一次庭审中，仲裁庭注意到，申请人提交的证据材料中包括了三份合同和相关的证据，即 2006 年 2 月 11 日签订的 01 号合同、2006 年 3 月 20 日签订的 02 号合同和 2006 年 3 月 27 日签订的 03 号合同，但申请人在仲裁申请书中只是依据 02 号和 03 号合同中的仲裁条款提请仲裁，01 号合同只作为本案的证据，并未将其纳入本案的仲裁范围。第一次庭审后，申请人就被申请人的抗辩并且为了证明 2006 年被申请人所付货款并非是 02 号和 03 号合同的货款而是 01 号合同项下的货款，又向仲裁委员会提交变更仲裁请求的申请，请求将 01 号合同纳入本案审理的范围，经仲裁庭核对 01 号合同中的仲裁条款和其他相关条款，接受了申请人的上述请求，确认将 01 号合同纳入本案审理范围，与 02 号和 03 号合同一并审理。故仲裁庭认为，本案范围内所指合同应当是 01 号合同、02 号合同和 03 号合同。

同时，在第一次庭审后，被申请人也向仲裁庭提交了反请求，但仲裁庭注意到，被申请人的前述反请求并非针对本案项下的 01 号、02 号和 03 号合同，而且被申请人提交的证据也不是针对本案上述三份合同的。仲裁庭认为，因被申请人的反请求不属于本案的管辖范围，故，仲裁庭无法受理。

（三）本案合同的实际履行及其责任。

经庭审，仲裁庭注意到，本案三份合同签订后，双方都有履约行为的表示，双方履约事实表现在下列两个方面：

1、关于申请人的交货情况

在庭审中，申请人称，2006 年 2 月 11 日签订的 01 号合同项下的货物，分别在 2006 年 2 月 27 日、3 月 1 日和 3 月 3 日共分 5 个货柜发出，合计 5700 罐，有报关单和其他相关证据佐证。2006 年 3 月 20 日签订的 02 号合同项下的货物分两批发货，第一批两个货柜发到洛杉矶，第二批 1 个货柜发到新泽西，合计 3 个货柜，共 3420 罐。2006 年 3 月 27 日签订的 03 号合同项下的货物，在申请人没有收到被申请人预付定金的情况下，只发了一个货柜，计 1140 罐。上述三份合同共发货 9 个货柜，每柜 1140 罐。申请人为此向仲裁庭提交了证明其主张的报关单和相关证据。

在庭审中，被申请人当庭向仲裁庭确认收到上述 9 个货柜的货物，对申请人陈述的发货情况及具体发货数量亦没有异议。因此，仲裁庭对申请人主张的其在本案三份合同项下所交货物的数量予以认可。

2、关于被申请人的付款情况

被申请人在答辩书中称，就申请人在仲裁请求中所涉的两份合同即 02 号和 03 号合同，被申请人已依约履行了付款义务，即 2006 年 3 月 23 日付 519,89 美元、2006 年 4 月 3 日付 18 万美元、2006 年 4 月 12 日付 8 万美元、2006 年 4 月 26 日付 44,608 美元。

对此，申请人承认收到了被申请人上述款项，但申请人

认为，被申请人支付的上述款项是 01 号合同项下的货款，而非 02 号和 03 号合同项下的货款，申请人仅收到 02 号和 03 号合同项下 51,984 美元的预付定金，被申请人尚有 294,576 美元的货款未曾支付。

针对上述付款的情况，为分清双方的责任，确定被申请人是否还欠申请人货款以及被申请人应付的货款金额，必须要查明本案三份合同项下申请人向被申请人发货的货值以及申请人已收到的货值。

仲裁庭仔细核对了有关证据并根据庭审查明的事实，仲裁庭注意到：

01 号合同的货值为：

$5,700 \times 83.50 = 475,950$ 美元

02 号合同的货值为：

$3,420 \times 76 = 259,920$ 美元

03 号合同的货值为：

$1,140 \times 76 = 86,640$ 美元

上述三份合同项下被申请人确认申请人向被申请人所交货的数量的货值为 475,950 美元 + 259,920 美元 + 86,640 美元 = 822,510 美元。

而申请人确认的被申请人所支付的款项金额，除被申请人自己所述的 4 单款项（51,984 美元 + 180,000 美元 + 80,000 美元 + 44,608 美元）= 356,592 美元外，还在 2006 年 2 月 5 日收到 95,190 美元（01 号合同项下的预付定金）和 2006 年 3 月 22 日收到 76,152 美元（01 号合同项下的 1 个货柜的 80

%的货款），故，申请人实际收到被申请人所付货款为527,934美元，依据以上，仲裁庭计算后认为，被申请人尚欠申请人三份合同项下的货款294,576美元。

综上所述，仲裁庭认为，根据《公约》第五十三关规定，被申请人有义务向申请人支付尚未付清的货款，即使是"滚动付款"的方式，也应当将"滚动交货"所交付货物的货款全部付清。

（四）关于请求

1、关于申请人的第1项仲裁请求

根据上述仲裁庭意见（三），仲裁庭支持申请人的第1项请求。

2、关于申请人的第2项仲裁请求

仲裁庭注意到，申请人提交的证据和在庭审中的陈述均表明，申请人所述的损失为利息损失。如上所述，仲裁庭查明，被申请人已确认收到本案合同项下的全部货物，按照合同"付款方式"的约定，被申请人应先预付20%定金、其余80%的款项在货到港口10天前付清，但被申请人却未按此约定向申请人付清全部货款，仲裁庭认为，根据《公约》第七十八条的规定，申请人向被申请人索要利息损失的请求是合理的。仲裁庭支持申请人向被申请人索要利息损失的请求。

仲裁庭还注意到，申请人于2007年3月30日向仲裁庭提交了利息损失计算清单。就利息的计算，仲裁庭认为：

（1）关于利息损失计算的基数

被申请人拖欠本案 2 个合同项下货款合计 207,936 + 86,640 = 294.576 美元。其中：申请人 2006 年 3 月 27 日发货的欠款 3,420×76×80 % = 207,936 美元；申请人 2006 年 4 月 6 日发货的欠款 1,140×76×100 % = 86,640 美元。

（2）关于利率：仲裁庭认为，本案利率按照年利率 5.6% 计算是适当的。仲裁庭支持申请人按照年利率 5.6% 计算被申请人迟延付款的利息。

（3）关于利息计算的期限

仲裁庭注意到，双方的交易方式是滚动交货和滚动付款，而关于付款方式，双方在合同中既约定了电汇方式，也约定了信用证方式，在庭审中，双方均承认，在合同实际履行中，双方采用的是电汇方式。仲裁庭还注意到，申请人和被申请人均未向仲裁庭提交货物到港的确切日期。但仲裁庭回顾了本案有关证据后认为，申请人提交的证据能够清楚的表明发货时间，被申请人对此也无异议。因此，仲裁庭认为，考虑到中国和美国之间通常的国际货物运输时间，以发货时间为始点开始计算的某个时间作为被申请人的应付款时间是适当的。也因此，仲裁庭酌定认为，2006 年 3 月 27 日所发货物拖欠的 207,936 美元的利息计算期限从 2006 年 4 月 27 日开始计算至 2007 年 3 月 31 日止按 5.6% 的年利率计算为 10,783.05 美元；2006 年 4 月 6 日所发货物拖欠的 86,640 美元的利息计算期限从 2006 年 5 月 6 日开始计算至 2007 年 3 月 31 日止按 5.6% 的年利率计算为 4,373.30 美元；上述 2 项合计为 15,156.35 美元。被申请人还应向申请人支付从 2007 年 4 月 1 日起至被申请人实际支付之日为止以 294,576 美元为基数、按照 5.6% 的年利率计算的利息。仲裁庭支持申请人

按照上述计算方式向被申请人索要利息损失。

3、关于申请人的第 3 项仲裁请求

仲裁庭注意到了申请人关于索要本案律师费 7,350 美元的请求，申请人向仲裁庭提交的律师费发票显示，申请人实际收取的律师费是人民币 57,000 元，申请人的解释是 7,350 美元是由 57,000 元人民币折算而来。仲裁庭认为，根据本案情况，申请人的该项请求是合理的。仲裁庭支持申请人向被申请人索要律师费人民币 57,000 元的请求。

4、关于申请人的第 4 项仲裁请求

仲裁庭也注意到了申请人向被申请人关于索要其因本案发生的差旅费的请求，仲裁庭认为，申请人提交的有关证据无法证明与本案的关系，因此，仲裁庭对申请人的该项请求无法予以支持。

5、关于本案仲裁费

仲裁庭认为，本案仲裁费用应由申请人承担 5%，由被申请人承担 95%。

## 三、裁　决

基于以上仲裁庭多数意见，仲裁庭经合议，依法裁决如下：

（一）被申请人向申请人支付拖欠的货款 294,576 美元；

（二）被申请人赔偿申请人因违约造成的损失 15,156.35

美元；被申请人还应向申请人支付从 2007 年 4 月 1 日起至被申请人实际支付之日为止以 294,576 美元为基数、按照 5.6% 的年利率计算的利息；

（三）被申请人向申请人支付律师费 57,000 元人民币；

（四）驳回申请人的其他仲裁请求；

（五）本案仲裁费共计人民币 82,648 元（已由申请人预交），由申请人承担 5% 即人民币 4132.4 元，由被申请人承担 95% 即人民币 78515.6 元；被申请人应将申请人代其垫付的仲裁费人民币 78515.6 元直接支付给申请人。

上述应由被申请人向申请人支付的款项，被申请人应于本裁决作出之日起 15 天内履行完毕。

本裁决为终局的，自作出之日起生效。

首席仲裁员：

仲　裁　员：

仲　裁　员：

二〇〇七年十月二十六日于北京

14

# 公　　证　　书

（2008）沪东证外经字第 14006 号

　　兹证明前面的复印件内容与上海康泰生化科技有限公司的《中国国际经济贸易仲裁委员会裁决书》原件相符，原件上"中国国际经济贸易仲裁委员会"的印章属实。

中华人民共和国上海市东方公证处

公　证　员　



二〇〇八年十一月二十七日

# CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

## ARBITRAL AWARD

Claimant:  Shanghai Contake Chemicals Co., Ltd.

Address:  6/F, Liaoyou Building, 1100 Dingxi Rd, Changning District, Shanghai

Attorney:  Yang Songsheng

Respondent:  GREN AUTOMOTIVE INC.

Address:  625A, Pierce Street, Somerset, NJ 08873, U.S.A.

Attorneys:  Hu Shijian, An Tao

BEIJING

October 26, 2007

# ARBITRAL AWARD

(2007) Zhong Guo Mao Zhong Jing Cai Zi No. 0498

China International Economic and Trade Arbitration Commission (hereinafter referred to as "CIETAC"), in accordance with the arbitration clauses set out in the **SHRG060002 Sales Confirmation** (hereinafter referred to as "No. 2 Contract") dated March 27, 2006 and the **SHRG060003 Sales Confirmation** (hereinafter referred to as "No. 3 Contract") dated March 20, 2006 made and entered into by and between the Claimant Shanghai Contake Chemicals Co., Ltd. (hereinafter referred to as the "Claimant") and the Respondent GREN AUTOMOTIVE INC. (hereinafter referred to as the "Respondent") as well as the written Arbitration Application submitted by the Claimant to CIETAC on March 12, 2007, accepted the Arbitration Case concerning the dispute under the foregoing Contracts (Case No. G20070177).

The arbitration proceedings of this Case shall be governed by the *Arbitration Rules of China International Economic and Trade Arbitration Commission* (hereinafter referred to as "*Arbitration Rules*") effective as from May 1, 2005.

CIETAC Secretariat sent by express the Notice of Arbitration for this Case, *Arbitration Rules* and the *Panel of Arbitrators* of CIETAC separately to the Claimant and the Respondent on March 19, 2007, and meanwhile sent to the Respondent the Arbitration Application and the appendices thereto submitted by the Claimant.

On June 5, 2007, the Respondent submitted to CIETAC the "Statement of Defense" and the appendices thereto.

The Claimant selected Mr. An Hongqi as the Arbitrator for this Case. The Respondent selected Mr. Zhou Zhonghai as the Arbitrator for this Case. Due to the failure by the

2

Claimant and the Respondent to jointly select or entrust CIETAC Chairman to appoint the Chief Arbitrator within the period as prescribed, CIETAC Chairman, in accordance with the provisions of the *Arbitration Rules*, appointed Ms. Yan Siyi as the Chief Arbitrator for this Case. The above-mentioned three arbitrators formed an Arbitration Tribunal on May 24, 2007 to jointly hear this Case.

The Arbitration Tribunal, in consultation with CIETAC Secretariat, decided to hold a hearing in Beijing on July 3, 2007. CIETAC Secretariat forwarded by express the Notice of Formation of the Arbitration Tribunal and the Notice of Oral Hearing for this Case separately to both parties on June 6, 2007.

On July 3, 2007, the Arbitration Tribunal held a hearing to hear this Case in Beijing. Both parties entrusted their attorneys to be present at the hearing. In the hearing, the respective attorneys for the Claimant and the Respondent made statements on the factual and legal issues in respect of this Case, answered the questions of the Arbitration Tribunal, submitted the originals of the related evidences, and the Arbitration Tribunal organized both parties to make cross examinations on the evidences.

On July 11, 2007, the Claimant submitted to CIETAC the "Supplementary Arbitration Application", applying for inclusion of the details of performance of the **SHRG060001 Sales Confirmation** (hereinafter referred to as "No. 1 Contract") by both parties in the scope of hearing for this Case.

On July 12, 2007, the Claimant submitted to CIETAC the "Statement on Details of Collection" and the appendices thereto.

On July 16, 2007, CIETAC Secretariat sent by express to the Respondent the foregoing "Supplementary Arbitration Application" and "Statement on Details of Collection" and the appendices thereto.

The Arbitration Tribunal consented to the Claimant's application for inclusion of the details of performance of No. 1 Contract in the scope of hearing for this Case, and decided to hold a hearing for the second time in Beijing on August 8, 2008. On July 24, 2007, CIETAC Secretariat sent by express separately to both parties the Notice of Oral Hearing for this Case.

On August 6, 2007, the Respondent submitted to CIETAC Secretariat the "Arbitration Counterclaim" and the "Claim for Giving Defense Period and Approving Filing of Counterclaim".

On August 8, 2007, the Arbitration Tribunal held a hearing in Beijing to hear this Case. Both parties entrusted their attorneys to be present at the hearing. Prior to the oral hearing, CIETAC Secretariat forwarded to the Claimant the "Arbitration Counterclaim" and the "Claim for Giving Defense Period and Approving Filing of Counterclaim" submitted by the Respondent. In the hearing, the respective attorneys for the Claimant and the Respondent made statements on the factual and legal issues in respect of this Case, answered the questions of the Arbitration Tribunal, submitted the originals of the related evidences, and the Arbitration Tribunal organized both parties to make cross examinations on the evidences.

It is found out by the Arbitration Tribunal by oral hearing that, the contract on which the claim filed by the Respondent in the "Arbitration Counterclaim" was based was not the contract on which the Claimant to this Case was based for filing the arbitration application, therefore, the Arbitration Tribunal decided not to accept the counterclaim of the Respondent. On August 17, 2007, CIETAC Secretariat sent by express separately to both parties the decision by the Arbitration Tribunal of non acceptance of the counterclaim of the Respondent.

All the arbitration documents relating to this Case have been served by CIETAC

4

Secretariat on both parties in accordance with the Arbitration Rules of CIETAC. This Case is decided and closed now, and the Arbitration Tribunal through deliberation, rendered this Award by a majority opinion.

**NOW, THEREFORE**, the facts of this Case, majority opinion of the Arbitration Tribunal and contents of award are hereby stated separately as follows:

## I. Facts Of This Case

The Claimant and the Respondent signed No. 2 Contract on March 20, 2006, whereby the Claimant sold to the Respondent 3420 pots of **R-134a** goods, US$76/pot, and the total contract price is US$259,920, FOB Shanghai, with a deposit of 20% of the contract price, and the remaining 80% of the contract price to be paid off 10 days prior to arrival of goods at the port. The Claimant and the Respondent signed No. 3 Contract on March 27, 2006, except for the agreed delivery quantity of two containers, the unit price and terms of payment, etc. were the same as No. 2 Contract.

### The Claimant alleged:

After signing of the above contracts, because one container could hold 1140 pots only, the Claimant delivered all the goods under No. 2 Contract above to the Respondent by two batches and using three containers, however, the Respondent paid the deposit (20% of the contract price) only, and the remaining 80% was not paid. Under the condition that the Respondent failed to make continual payment of the remaining sums in accordance with the contract, at the request of the Respondent over and over, the Claimant delivered to the Respondent one container of goods. The Respondent, by three times, took delivery of the goods of 4 containers (4560 pots, with a total value of US$346,560) delivered by the Claimant to the Respondent, but only made a payment of US$519,84 (deposit) to the Claimant, so far, the remaining US$294,576 is not paid to the Claimant. The

5

Respondent did not raise any objection to the quality of goods, nor raise the inspection report required for the quality objection during the period as agreed in the contract. The Claimant demanded the Respondent for such payment many times by telephone, email, fax, etc., the Respondent offered as an excuse first and then paid no attention.

The Claimant considered that the act of the Respondent of refusal to make further payment for goods constituted a material breach of contract, on the grounds of the above facts and reasons, the Claimant hereby filed the following arbitration claims:

(1).request the Respondent to perform the payment for goods in the sum of US$294,576 to the Claimant;

(2).request the Respondent to indemnify the Claimant against the loss of US$17,300 (temporarily calculated to the end of March 2007, if it is overdue, additional US$49 per day) arising out of breach of contract by the Respondent;

(3).request the Respondent to pay to the Claimant US$7,350 to make compensation for the attorney fee incurred by the Claimant;

(4). request the Respondent to reimburse the Claimant for the travel expenses incurred for handling this Case;

(5). request the Respondent to bear all the arbitration fees for this Case.

With regard to the arbitration claims of the Claimant, the Respondent answered as follows:

The Respondent has performed the obligation of payment in accordance with the contract, and paid US$51,984, US$180,000, US$80,000, US$44,608 respectively on March 23, 2006, April 3, 2006, April 12, 2006 and April 26, 2006. The Respondent

6

considered, the arbitration claims of the Claimant were lack of factual and legal basis, and should be dismissed, and the Claimant shall be requested to bear the attorney fee and arbitration fees incurred by the Respondent.

With reference to the defense by the Respondent, the Claimant stated in its submitted *Supplementary Statement*:

Delivery transaction between both parties was not only limited to No. 2 Contract and No. 3 Contract applied for arbitration in this Case, as early as 2005, both parties made transaction relating to delivery of goods. Both parties ever signed No. 1 Contract on February 11, 2006, whereby both parties agreed on delivery of goods of 5700 pots (5 containers), at a unit price of US$83.5, and with a total contract price of US$475,950, and on February 15, 2006, the Claimant received a deposit of 20% of the contract price in the sum of US$95,190 prepaid by the Respondent, and thereafter, the Claimant delivered to the Respondent by three batches all the goods under No. 1 Contract. The Claimant received on March 22, 2006 the remaining 80% payment for goods of one container in the sum of US$76,152 paid by the Respondent, and the remaining 80% payment for goods of other four containers in the sum of US$304,608 were paid in April 2006 in three installments: the Claimant received US$180,000 on April 4, 2006, US$80,000 on April 14, and the remaining US$44,608 on April 29. Before all the payment for goods under No. 1 Contract was paid off, both parties signed No. 2 Contract and No. 3 Contract respectively on March 20, 2006 and March 27, 2006, that is, the facts referred to in the Arbitration Application. In the sum paid by the Respondent prior to April 26, 2006, only the sum of US$51,984 received by the Claimant on March 24 was the deposit (20% of the contract price) paid by the Respondent in accordance with No. 2 Contract. The above facts could be proved not only by the contract which provided for cash on delivery as agreed by both parties, but also by the email sent by the principal of the Respondent Liu Shao to the Claimant in which the payment for goods owed to the Claimant was admitted, especially the appendix to the Repayment Letter dated April 28, 2006 could prove the fact, whereby

7

the Respondent confirmed that it had received the goods of two containers transported to **LOS ANGELES** and promised to pay off the payment for goods prior to May 15, 2006. The Claimant considered, the statement made by the Respondent in the Statement of Defense that it had paid off all the payment for goods prior to April 26, 2006 was mutually conflicting with the Respondent's promise on April 28, 2006 that it would repay all the payment for goods prior to May 15, 2006. Furthermore, three sums of payment for goods of US$304,608 in total paid by the Respondent in April 2006, were completely consistent with the sum of payment for goods owed under No. 1 Contract.

The Claimant considered, both parties have performed the obligations of delivery and payment under No. 1 Contract made and entered into by and between the Claimant and the Respondent on February 11, 2006, therefore, the Claimant did not mention such information in the Arbitration Application, however, the Respondent answered, more than US$300,000 payment for goods paid to the Claimant by the Respondent in April 2006 in three installments was the payment for goods under No. 2 Contract and No. 3 Contract, the Claimant has supplemented to the Arbitration Tribunal a series of related evidences to prove that payment of such more than US$300,000 was just performance by the Respondent of the obligation of payment under No. 1 Contract, and such amount was completely consistent with that under No. 1 Contract. The amount owed to the Claimant that the Respondent admitted in the email sent by the Respondent to the Claimant on April 12, 2006 was also consistent with the allegation of the Claimant. Contents of the email dated April 29, 2006 proved that US$44,608 was the remaining sum paid by the Respondent under the previous contract, and at the same time, the Respondent confirmed that it had received the goods of two containers delivered by scheduled flight dated March 29, 2006 and would pay off the payment for goods prior to May 15, 2006 of the same year. At the meantime, the Respondent stated in the emails dated June 13, 2006, July 5 and June 6 that the Respondent would make efforts to solve the owed payment for goods and request the Claimant to provide the details of accounts payable, and also promised that, in the subsequent delivery by

8

the Claimant, it would gradually reduce the line of amounts owed by the Respondent, and stated to the Claimant the reasons for arrearage due to bad market condition. The Claimant also submitted three copies of Inward Remittance Notice given by China Merchants Bank Shanghai Branch to the Claimant. The Claimant considered, the evidences listed above could prove the fact that the Respondent still owed to the Claimant the payment for goods in the sum of nearly US$300,000, however, because the fact of rolling settlement of payment for delivery under the fore and aft contracts indeed exists between both parties, and No. 1 contract is beyond the scope of arbitration application for this Case, therefore, the argument between both parties to this Case focuses on whether such more than US$300,000 to which the Respondent made objection is the sum paid under No. 1 Contract, or the sum paid under No. 2 and No. 3 Contracts, for this reason, the Claimant changed the former arbitration claims, and requested to include the facts concerning the performance of obligations under No. 1 Contract in the scope of hearing for this Case.

## II. Majority Opinion of Arbitration Tribunal

### 2.1 Applicable law

Whereas no clauses of applicable law are stipulated in the contract for this Case, and respective place of business of both parties to this Case is China and America, such two countries are the contracting parties to the *United Nations Convention on Contracts of International Sales of Goods* (hereinafter referred to as the "*Convention*"). Therefore, the Arbitration Tribunal decided to apply the *Convention* to this Case. If no provisions are prescribed in the *Convention*, references shall be made to the laws and international practices relating to international trade.

### 2.2. Contracts within the scope of this Case and scope of hearing for this Case

It is found by hearing that, both parties to this Case ever traded in 2005, and specific transactions were made, in their transactions, generally both parties

signed contracts continuously for many times, not "settlement for an order on a lump-sum basis", but "rolling delivery", and "rolling payment", that is, after signing of the contract, the Respondent first made deposit to the Claimant, and then the Claimant would deliver the goods, after the goods arrived at the destination and the Respondent accepted the goods, the Respondent would pay to the Claimant the remaining payment for goods within certain period as stipulated in the contract, until full payment of the payment for goods under each contract. Both parties had no disputes about this operation stated in the involved contracts under this Case, and confirmed with the Arbitration Tribunal this fact at the hearing.

In the first hearing, the Arbitration Tribunal noticed, the Evidence Materials submitted by the Claimant included three contracts and relevant evidences, that is, No. 1 Contract dated February 11, 2006, No. 2 Contract dated March 20, 2006 and No. 3 Contract dated March 27, 2006, however, in the Arbitration Application, the Claimant filed arbitration solely based on the arbitration clauses in No. 2 and No. 3 Contracts, with No. 1 Contract as the evidence for this Case only, and did not include such contract in the scope of arbitration for this Case. After the first hearing, the Claimant submitted the application for change of arbitration claims to CIETAC as a result of the defense by the Respondent and for the purposes of proving the payment for goods paid by the Respondent in 2006 was not the payment for goods under No. 2 and No. 3 Contracts but that under No. 1 Contract, and requested to include No. 1 Contract in the scope of hearing for this Case, upon verification of the arbitration clauses in No. 1 Contract and other relevant clauses, the Arbitration Tribunal accepted the foregoing claims filed by the Claimant, and determined to include No. 1 Contract in the scope of hearing for this Case, to be heard together with No. 2 and No. 3 Contracts. Therefore, the Arbitration Tribunal held, the contracts referred to within the scope of this Case shall be No. 1, No. 2 and No. 3 Contracts.

At the meantime, after the first hearing, the Respondent also filed counterclaims to the Arbitration Tribunal, but the Arbitration Tribunal noticed, the foregoing counterclaims of the Respondent were not aiming at No. 1, No. 2 and No. 3 Contracts for this Case, and the evidences submitted by the Respondent were not aiming at the above three contracts for this Case. The Arbitration Tribunal holds that, because the counterclaims of the Respondent are beyond the scope of jurisdiction of this Case, the Arbitration Tribunal can not accept.

### 2.3 Actual performance of the contracts for this Case and specific responsibilities

After hearing, the Arbitration Tribunal noticed that, after signing of three contracts for this Case, both parties gave an indication of performance of the contract, which can be shown as follows:

2.3.1. Information on delivery by the Claimant

In the hearing, the Claimant alleged, the goods under No. 1 Contract dated February 11, 2006 were delivered respectively on February 27, March 1 and March 3, 2006, with five containers and 5700 pots totally delivered, which can be proved by customs declaration form and other related evidences. The goods under No. 2 Contract dated March 20, 2006 were delivered by two batches, the first batch of two containers was delivered to Los Angeles, and the second batch of one container was delivered to New Jersey, with three containers and 3420 pots totally. With respect to the goods under No. 3 Contract dated March 27, 2006, to the extent that the Claimant has not received the deposit prepaid by the Respondent, only one container was delivered, with 1140 pots totally. Nine containers (1140 pots/container) were delivered under the above three contracts. The Claimant submitted to Arbitration Tribunal the customs declaration form and relevant evidences to prove its allegation.

In the hearing, the Respondent confirmed with the Arbitration Tribunal that it had received the goods of the above nine containers, and had no objection to the statements made by the Claimant about the delivery information and specific delivery quantity. Therefore, the Arbitration Tribunal approved the quantity of goods that the Claimant alleged to have delivered under three contracts for this Case.

2.3..2. Information on payment by the Respondent

The Respondent answered in the Statement of Defense, in relation to No. 2 and No. 3 Contracts referred to in the arbitration claims of the Claimant, the Respondent has performed the obligation of payment in accordance with the contracts, i.e., US$519,89 was paid on March 23, 2006, US$180,000 on April 3, 2006, US$80,000 on April 12, 2006 and US$44,608 on April 26, 2006.

The Claimant admitted to have received the above sums paid by the Respondent, but the Claimant considered, the above sums paid by the Respondent were the payment for goods under No. 1 Contract, not the payment for goods under No. 2 and No. 3 Contracts, the Claimant just received the deposit in the sum of US$51,984 under No. 2 and No. 3 Contracts, and the Respondent still did not pay the remaining US$294,576.

With regard to the above information on payment, in order to specify the responsibilities of both parties, and determine whether the Respondent owed to the Claimant the payment for goods or not as well as the amount of payment for goods payable by the Respondent, it must be necessary to find out the value of goods delivered by the Claimant to the Respondent and the value the Claimant has received under three contracts under this Case.

12

The Arbitration Tribunal carefully verified the relevant evidences and noticed based on the facts found out by hearing:

Value of goods under No. 1 Contract:

$5,700 \times 83.50 = US\$475,950$

Value of goods under No. 2 Contract:

$3,420 \times 76 = US\$259,920$

Value of goods under No. 3 Contract:

$1,140 \times 76 = US\$86,640$

The Respondent confirmed the value of goods delivered by the Claimant to the Respondent under the above three contracts was US\$475,950 + US\$259,920 + US\$86,640 = US\$822,510.

However, the Claimant confirmed the amounts paid by the Respondent, in addition to four sums of amounts (US\$51,984 + US\$180,000 + US\$80,000 + US\$44,608 = US\$356,592) stated by the Respondent itself, it also received US\$95,190 on February 5, 2006 (deposit under No. 1 Contract) and US\$76,152 on March 22, 2006 (80% payment for goods of one container under No. 1 Contract), therefore, the payment for goods paid by the Respondent that the Claimant actually received was US\$527,934. Based on the above data, the Arbitration Tribunal holds after calculation, the Respondent still owes to the Claimant the payment for goods in the sum of US\$294,576 under three contracts.

By reason of the foregoing, the Arbitration Tribunal holds, in accordance with the provisions of Article 53 of the Convention, the Respondent shall be obligated to pay to the Claimant the outstanding

13

amounts, even if the form of "rolling payment" is adopted, all the payment for goods delivered in the form of "rolling delivery" shall be paid off.

## 2.4 Regarding claims

2.4.1. Regarding the first arbitration claim of the Claimant

Based on the foregoing Opinion (III) of the Arbitration Tribunal, the Arbitration Tribunal supports for the first claim of the Claimant.

2.4.2. Regarding the second arbitration claim of the Claimant

The Arbitration Tribunal has noticed that, the evidences submitted by the Claimant and the statements made by the Claimant in the hearing indicate the loss stated by the Claimant are interest loss. By reason of the foregoing, it is found out by the Arbitration Tribunal, the Respondent confirmed to have received all the goods under the contracts for this Case, according to the provisions of "Payment Way" stipulated in the contract, the Respondent shall make a deposit (20% of the contract price) first, and the remaining 80% shall be paid off 10 days prior to arrival of goods at the port, however, the Respondent failed to pay off all the payment for goods in accordance with such provisions, the Arbitration Tribunal holds, in accordance with the provisions of Article 78 of the Convention, the claim for interest loss filed by the Claimant against the Respondent is justifiable. The Arbitration Tribunal supports for the claim for interest loss filed by the Claimant against the Respondent.

The Arbitration Tribunal also noticed, the Claimant submitted the interest loss calculation list to the Arbitration Tribunal on March 30, 2007. In respect of calculation of interest, the Arbitration Tribunal holds:

2.4.2.1. Regarding the base for calculation of interest loss

14

The Respondent owed the payment for goods (207,936+86,640=US$294,576) under two contracts for this Case, of which, arrearage of delivery by the Claimant on March 27, 2006 was 3,420 ×76×80%=US$207,936; arrearage of delivery by the Claimant on April 6, 2006 was 1,140 × 76 × 100%=US$86,640.

2.4.2.2.Interest rate: The Arbitration Tribunal holds that, annual interest rate of 5.6% is applicable in this Case. The Arbitration Tribunal supports that the Claimant calculates the interest on payment for delay by the Respondent at a rate of 5.6%.

2.4.2.3.Period for interest computation

The Arbitration Tribunal noticed that, both parties traded in the form of rolling delivery and rolling payment, with respect to the payment way, both parties stipulated in the contract not only the way of T/T, but also the way of L/C, in the hearing, both parties admitted that they adopted the way of T/T in the actual performance of the contract. The Arbitration Tribunal also noticed that, neither the Claimant nor the Respondent submitted to the Arbitration Tribunal the actual date of arrival of goods at the port. However, the Arbitration Tribunal, after reviewing the related evidences for this Case, considered that the evidences submitted by the Claimant can clearly indicate the delivery date, and the Respondent raised no objection thereto. Therefore, the Arbitration Tribunal holds that, considering the usual transportation time for international goods between China and America, it is appropriate to deem some time calculated from the delivery date (starting time) as the payment term for the Respondent. Therefore, the Arbitration Tribunal holds at its discretion, the interest on US$207,936 owed of the goods delivered on March 27, 2006 was

15

US$10,738.05 calculated from April 27, 2006 to March 31, 2007 at annual rate of 5.6%; the interest on US$86,640 owed of the goods delivered on April 6, 2006 was US$4,373.30 calculated from May 6, 2006 to March 31, 2007 at annual rate of 5.6%; the above two sums were US$15,156.35 totally. The Respondent should also pay to the Claimant the interest calculated from April 1, 2007 to the date of actual payment by the Respondent at an annual rate of 5.6% and with US$294,576 as the base. The Arbitration Tribunal supports the Claimant to claim interest loss against the Respondent according to the above calculation method.

### 2.4.3. Regarding the third arbitration claim of the Claimant

The Arbitration Tribunal noticed the claim of the Claimant for the attorney fee of US$7,350 for this Case, it was shown on the invoice of attorney fee submitted by the Claimant to the Arbitration Tribunal, the attorney fee actually collected against the Claimant was RMB 57,000 Yuan, and the Claimant explained US$7,350 was converted from RMB 57,000 Yuan. The Arbitration Tribunal considers, according to the condition of this Case, such claim of the Claimant is justifiable. The Arbitration Tribunal supports for the claim filed by the Claimant for attorney fee of RMB 57,000 Yuan against the Respondent.

### 2.4.4. Regarding the fourth arbitration claim of the Claimant

The Arbitration Tribunal also noticed the claim filed by the Claimant against the Respondent for travel expenses incurred by the Claimant for this Case, the Arbitration Tribunal holds, the relevant evidences submitted by the Claimant can not prove the relationship with this Case, therefore, the Arbitration Tribunal does not support for such claim of the Claimant.

2.5. Regarding the arbitration fees for this Case

The Arbitration Tribunal holds that, 5% of attorney fees for this Case shall be assumed by the Claimant, and 95% shall be assumed by the Respondent.


### III. Award

On the grounds of the above majority opinion of the Arbitration Tribunal, the Arbitration Tribunal, after deliberation, lawfully renders an award as follows:

3.1. The Respondent shall pay to the Claimant the owed payment for goods in the sum of US$294,576;

3.2. The Respondent shall indemnify the Claimant against the loss of US$15,156.35 arising out of breach of contract; the Respondent shall also pay to the Claimant the interest calculated from April 1, 2007 to the date of actual payment by the Respondent at an annual rate of 5.6% and with US$294,576 as the base;

3.3. The Respondent shall pay to the Claimant the attorney fee of RMB 57,000 Yuan;

3.4. Other arbitration claims of the Claimant are hereby dismissed;

3.5. The arbitration fees for this Case was RMB 82,648 Yuan totally (prepaid by the Claimant), 5% (RMB 4,132.4 Yuan) shall be assumed by the Claimant, and 95% (RMB 78,515.6 Yuan) shall be assumed by the Respondent; the Respondent shall pay directly to the Claimant the attorney fee of RMB 78,515.6 Yuan paid by the Claimant on behalf thereof.

The above amounts payable by the Respondent to the Claimant shall be paid off within 15 days from the date when this Award is rendered.

This Award is final and shall come into force as from the date when it is rendered.



Chief Arbitrator: [Signature] Yan Siyi

Arbitrator: [Signature] An Hongqi

Arbitrator:

**China International Economic and Trade Arbitration Commission Shanghai Commission** [SEAL]

October 26, 2007. Beijing

18

Translation

NOTARIAL CERTIFICATE

(2008)H.D.Z.W.J.Z. No. 14006


This is to certify that the foregoing photocopy is the same as the original Arbitral Award of China International Economic and Trade Arbitration Commission for Shanghai Contake Chemicals Co., Ltd. and that the seal of China International Economic and Trade Arbitration Commission affixed to the original copy is genuine.


WU Yu (Seal)

Notary Public


The People's Republic of China

Shanghai Oriental Notary Public Office

(Seal)


Dated: November 27, 2008

# 公　　证　　书

(2008)沪东证外经字第 14007 号

　　兹证明前面的英文译本内容与上海康泰生化科技有限公司的(2008)沪东证外经字第 14006 号公证书中文原本相符。

中华人民共和国上海市东方公证处

公　证　员 

二〇〇八年十一月二十七日

Translation

NOTARIAL CERTIFICATE

(2008)H.D.Z.W.J.Z. No. 14007

This is to certify that the foregoing English version is true and faithful to the original Notarial Certificate (2008) H.D.Z.W.J.Z. No. 14006 in Chinese for Shanghai Contake Chemicals Co., Ltd..

WU Yu (Seal)

Notary Public

The People's Republic of China

Shanghai Oriental Notary Public Office

(Seal)

Dated: November 27, 2008

# 公　证　书



## 中华人民共和国上海市东方公证处



EXHIBIT

C

《售货确认书》(以下简称 02 号合同 )和 SHRGO60003 号《售货确认书》(以下简称 03 号合同 )中的仲裁条款为依据申请仲裁，后又向仲裁委提交了仲裁补充申请书，申请将双方对 SHRGO6001 号《售货确认书》(以下简称 01 号合同)的履行情况纳入该案审理范围。01 号合同、02 号合同、03 号合同系完全独立的合同，其中的仲裁条款也是相互独立的案件。三个合同作为一个案件合并审理本无可厚非，但仲裁委在将 01 号合同纳入本案审理并就此向国人公司送达补充申请书之日起，应当单独计算国人公司的答辩期限。根据 2005 年 5 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》(以下简称仲裁规则) 第十二条第（一）款的规定，仲裁委给予国人公司的答辩期应当为 45 天，但仲裁委于 2007 年 7 月 16 日以特快专递的方式向国人公司送达了上述仲裁补充申请书，后决定于 2007 年 8 月 8 日开庭审理，相距时间不足 20 天。二、仲裁庭擅自决定不予受理国人公司的反请求。仲裁过程中，国人公司提出了反请求，对此，仲裁庭以仲裁反请求书中提出的请求所依据的合同不是本案康泰公司提出仲裁申请所依据的合同为由不予受理。根据仲裁规则第十一条、第十三条的规定，案件的受理属于仲裁委员会的职责，而仲裁庭在其中仅有是否接受逾期提交的反请求答辩书的权利。综上所述，由于仲裁的程序与仲裁规则不符，导致国人公司没有足够的答辩时间，致使国人公司的权利不能正常行使；反请求未能得到受理，使国人公司的合法权益无法得到保障，使仲裁裁决丧失了公正性，该仲裁裁决依法应予撤销。

被申请人康泰公司答辩称：一、国人公司提出的答辩期

2

不足 45 天违反仲裁规则的主张不成立。首先，仲裁规则第十二条规定：被申请人应在收到仲裁通知之日起 45 天内向仲裁委员会秘书局或其分会秘书处提交答辩书。因此，国人公司的答辩期起算日为其收到仲裁通知之日，而非收到仲裁补充申请书之日。2007 年 3 月 19 日，仲裁委向国人公司寄送了仲裁通知，国人公司于 2007 年 6 月 5 日向仲裁委提交了答辩状。因此国人公司的答辩期已超过 45 天。其次，仲裁规则并未规定仲裁申请人对其仲裁请求提出更改并被受理后，仲裁庭必须就变更部分单独计算答辩期，或延长答辩期。仲裁委就本案决定合并审理后，01 号合同就成为本案的一部分，原已进行的答辩期应连续计算。因此仲裁委于 2007 年 7 月 16 日向国人公司送达仲裁补充申请书后定于 2007 年 8 月 8 日开庭审理本案，并未违反仲裁规则的规定。

二、国人公司提出的仲裁庭不受理其反请求因而违反了仲裁规则的主张不能成立。首先，仲裁规则第十一条规定了仲裁委对申请人提出仲裁申请的受理程序，该条款对受理被申请人提出反请求未作规定。其次，虽然仲裁规则对于被申请人的反请求的受理应由仲裁庭决定还是由仲裁委决定并未明确规定。但从本仲裁的实际情况看，国人公司据以提出反请求的合同与康泰公司据以提起仲裁请求的合同互相独立，在法律上和事实上均无任何牵连。因此，仲裁庭对于国人公司提出的与仲裁请求毫无关联的反请求不予受理，是保证仲裁庭审程序顺利进行的必要措施。并且，仲裁庭在作出不予受理反请求的同时，明确告知国人公司可就其提交的合同提起新的仲裁申请。国人公司也于 2007 年 11 月 30 日就其前述合同向仲裁委提起了独立的仲裁请求，仲裁委已于 2008 年

3

3 月 11 日，向双方发出仲裁通知书，因此国人公司的权益并未因此受到任何损害。三、国人公司在仲裁过程中并未提出任何异议。仲裁规则第八条规定：一方当事人知道或者理应知道本规则或仲裁协议中规定的任何条款或情事未被遵守，但仍参加仲裁程序或继续进行仲裁程序而且不对此不遵守情况及时地、明示地提出书面异议的，视为放弃其提出异议的权利。在仲裁过程中，国人公司从未就前述其所认为的违反仲裁规则的事项提出任何异议，并始终参加仲裁程序。因此应该视为国人公司已经放弃了提出异议的权利。四、国人公司据以提起撤销仲裁裁决申请的法律依据不成立。国人公司依据《中华人民共和国民事诉讼法》第二百六十条的规定申请撤销仲裁裁决，但该条款规定的是不予执行仲裁裁决的情形。本案裁决不存在《中华人民共和国仲裁法》第五十八条规定的撤销情形，国人公司的申请不成立。综上，国人公司的申请应予驳回。

经审理，本院认为：

一、关于国人公司所提"答辩期不足 45 天"的问题。

经查，康泰公司在仲裁庭第一次庭审后，向仲裁庭提交了仲裁补充申请书一份，主要内容是：因国人公司将双方已履行完毕的以前合同项下支付的货款说成是为本案合同支付的货款，为此康泰公司认为有必要将双方对 01 号合同的履行情况纳入本案仲裁审理范围之中。

本院认为，康泰公司的上述申请，实质上是要求将 01 号合同的履行事实纳入仲裁案的审查范围，以 01 号合同的存在来证明国人公司已偿还的是 01 号合同项下的货款，从而证明其在仲裁申请中主张的是 02 号及 03 号合同项下的货

款数额。因康泰公司的上述申请并未变更其仲裁申请中的仲裁请求，故未构成对仲裁请求的更改。因此，本院对国人公司认为康泰公司的补充申请书构成更改仲裁请求，仲裁庭未就此另行给予其答辩期，违反仲裁规则的主张不予支持。

二、关于国人公司所提"仲裁庭擅自决定不予受理国人公司的反请求"的问题。

本院认为，在仲裁庭组成后，仲裁庭有权在审理仲裁案件的过程中决定是否受理被申请人的反请求。国人公司的该项主张没有法律依据，本院不予支持。

综上，国人公司提出的撤销仲裁裁决的理由均不能成立，依照《中华人民共和国仲裁法》第六十条之规定，裁定如下：

驳回国人机械公司请求撤销中国国际经济贸易仲裁委员会（2007）中国贸仲京裁字第0498号裁决的申请。

案件受理费四百元，由申请人国人机械公司负担（已交纳）。

本裁定为终审裁定。

审　判　长　　申小琦
代理审判员　　姚　颖
代理审判员　　胡　君

二〇〇八　年　九　月　十七　日

书　记　员　　贾　申

5

# 公　　证　　书

(2008)沪东证外经字第 14008 号

　　兹证明前面的复印件内容与上海康泰生化科技有限公司的(2008)二中民特字第 08482 号《民事裁定书》原件相符，原件上"北京市第二中级人民法院"的印章属实。

中华人民共和国上海市东方公证处

公 证 员　

二〇〇八年十一月三十七日

# CIVIL RULING

## BY

## BEIJING NO. 2 INTERMEDIATE PEOPLE'S COURT OF PRC

(2008) ER ZHONG MIN TE ZI No. 08482

The Complainant (the Respondent in the former arbitration case) is Gren Automotive Inc., at the address: 625A, Pierce Street, Somerset, NJ 08873, U.S.A., with

The Legal Representative Liu Shao, Vice President;

The agent *per procuration* Hu Shijiang, a lawyer with Shandong Guoren Law Firm; and

The agent *per procuration* An Tao, an employee of Gren Automotive Inc. Qingdao.

The Respondent (the Complainant in the former arbitration case) is Shanghai Contake Chemicals Co., Ltd., at the address: Room 201, Building 1, 3727, Chuan Nan Feng Drive, Airport Town, Shanghai, China, with

The legal representative Zhang Weihua, Chairman of the Board; and

The agent *per procuration* Zhang Yanwei, a lawyer with Shanghai United Law Firm.

The request that Gren Automotive Inc. (hereinafter "Gren Company") filed to reverse the arbitral award (2007) Zhong Guo Mao Zhong Jing Cai Zi No. 0498 by the China International Economic and Trade Arbitration Commission (CIETAC) has been accepted by the Court and tried by the Collegial Tribunal legally established by the Court. The trial is now concluded.

The Complainant, Gren Company, declared that regarding the arbitral award (2007) Zhong Guo Mao Zhong Jing Cai Zi No. 0498, the arbitration procedure was inconsistent with the

arbitration rules, and requested the Court to reverse such award in accordance with the law. The facts and reasons are as follows. I. The arbitral tribunal granted less than 45 days for Gren Company to provide a reply. Shanghai Contake Chemicals Co., Ltd. (hereinafter "Contake Company"), requested an arbitration first by virtue of the arbitration clauses in the Merchandise Sales Confirmation No. SHRG060002 (hereinafter "Contract 02") and the Merchandise Sales Confirmation No. SHRG060003 (hereinafter "Contract 03") concluded between the parties. However, thereafter, it submitted to the Arbitration Commission a supplemental request, to include the performance of the Merchandise Sales Confirmation No. SHRG06001 (hereinafter "Contract 01"), another contract between the parties, into the hearing of the case. Contract 01, Contract 02 and Contract 03 are absolutely independent from each other, and the arbitration clauses contained in them are intended for separate cases. Although it is no ground for blame to combine the three contracts into one case to hear, the period should be calculated separately for Gren Company to provide a reply, after the Arbitration Commission included Contract 01 into the case and sent the supplemental request of Contake Company to Gren Company. In accordance with Paragraph 1 Article 12 of *The Arbitration Rules of the China International Economic and Trade Arbitration Commission* implemented from May 1, 2005 (hereinafter "Arbitration Rules"), the Arbitration Commission should grant 45 days for Gren Company to provide a reply, but the actual time period was less than 20 days between the Arbitration Commission served, by means of express mail service, the supplemental request of Contake Company to Gren Company on July 16, 2007 and the Arbitration Commission decided to open the court session on August 8, 2007. II. The arbitral tribunal determined, without authorization, not to accept the counterclaims of Gren Company. During the arbitration process, Gren Company raised counterclaims, for which the arbitral tribunal decided not to accept the Counterclaim, on grounds that the contracts on which the counterclaims were based were not the contracts on which Contake Company filed the arbitration request. As provided in Articles 11 and 13 of the Arbitration Rules, it is the power of the Arbitration Commission to accept a case, and the power of the arbitral tribunal is limited to whether to accept an overdue reply to the counterclaim. For the foregoing reasons, the inconsistency between the arbitration procedure and the Arbitration Rules caused Gren Company to have had less than

the required time period to provide the reply and to have been unable to exercise its rights normally. That the counterclaims were not accepted caused the legal rights and interests of Gren Company to lack protection and the arbitral award to be unfair. The arbitral award should be reversed in accordance with the law.

The Respondent, Contake Company, pleaded. I. The claim is untenable that it violates the Arbitration Rules for Gren Company to have less than 45 days to provide the reply. First, Article 12 of the Arbitration Rules provides that the Respondent shall provide a reply to the secretariat of the Arbitration Commission or the secretariat of its sub-commission within 45 days of receiving the arbitral notice. For this reason, the reply period for Gren Company should start on the service of the arbitral notice, but not on the service of the supplemental request. On March 19, 2007, the Arbitration Commission served the arbitral notice to Gren Company. On June 5, 2007, Gren Company submitted the reply to the Arbitration Commission. The 45-day period had been exceeded before Gren Company provided the reply. Second, if the Complainant requests to change part of its claims and such request is accepted, the Arbitration Rules does not require that the arbitral tribunal must separately calculate the reply period against the changed part of the claim or to extend such reply period otherwise. After the Arbitration Commission decided to have a consolidated hearing, Contract 01 became part of the case and the existing reply period should continue to run. Therefore, the Arbitration Commission did not violate the Arbitration Rules by deciding to open the court session on August 8, 2007 after the service of the supplemental request to Gren Company on July 16, 2007. II. The claim is untenable that the arbitral tribunal violated the Arbitration Rules by not accepting the counterclaims of Gren Company. First, Article 11 of the Arbitration Rules provides what procedure the Arbitration Commission should use to accept the claims of the Complainant rather than the counterclaims of the Respondent. Second, the Arbitration Rules does not state clearly whether the counterclaims of the Respondent should be accepted by the arbitral tribunal or the Arbitration Commission. Despite this, considering the practical situation of the arbitration at hand, the contracts on which Gren Company based its counterclaims are independent from, and not connected in anyway either legally or factually with the contracts on which Contake

Company based its claims. Therefore, the arbitral tribunal ruled to not accept the counterclaims of Gren Company which are never connected with the arbitration claims. This measure was necessary to ensure the smooth running of the trial by the tribunal. Also, refusing to accept the counterclaims, the tribunal explicitly told Gren Company that it might raise new claims for arbitration by virtue of the contracts submitted. Moreover, thereafter, Gren Company filed an arbitration request separately with the Arbitration Commission on the said contracts, and the Arbitration Commission sent the arbitral notice to the two parties on March 11, 2008. Therefore, the rights and interests of Gren Company have not been damaged in whatever way. III. Gren Company did not raise any objection during the arbitration process. Article 8 of the Arbitration Rules provides that a party is deemed to have waivered its right to objection if it knows or should have known that any arbitration rules herein, or any clause or circumstance of the arbitration agreement is not complied with, but enters into or continues with the arbitration process by not raising any objection in writing in a timely and explicit manner against such noncompliance. During the process of arbitration, Gren Company did not raise any objection against the alleged violations of the Arbitration Rules hereinabove, but continued with the arbitration process. Therefore, Gren Company should be deemed to have waivered its right to objection. IV. The legal bases are untenable that Gren Company uses to request to reverse the arbitral award. Gren Company uses Article 260 of *The Civil Procedure Law of the People's Republic of China* as the basis to request to reverse the arbitral award, but what Article 260 provides for are circumstances of unenforceable arbitral award. The arbitral award concerned in the case at hand does not contain any of the circumstances as provided for in Article 58 of *The Arbitration Law of the People's Republic of China*, and the request of Gren Company is untenable. For the foregoing reasons, the request of Gren Company should be rejected.

After the trial, the Court held:

I. About Gren Company's argument of having had "less than 45 days to provide the reply"

The examination has found out that after the first court session, Contake Company submitted to the arbitral tribunal one supplemental request which says mainly that as Gren

Company had represented the payment for the goods under the previous contracts already performed and completed as the payment for the goods under the contracts in the current case, Contake Company considered it necessary to include the performance of Contract 01 between the parties into the arbitration hearing.

The Court held that with the supplemental request, what Contake Company requested in substance was that the fact of performance of Contract 01 be examined in the arbitration process, to use the existence of Contract 01 to prove that what Gren Company had paid for were the goods under Contract 01, so as to further prove that what Contake Company claimed for was the payment for the goods under Contract 02 and Contract 03. The above supplemental request does not change the Arbitration Claim, because it does not cause a change to the claims of Contake Company in the Arbitration Request. Therefore, the Court does not support the claim of Gren Company that the supplemental request of Contake Company changes the Arbitration Claims and that the arbitral tribunal violates the Arbitration Rules by not granting a separate reply period to Gren Company.

II. About Gren Company's argument that "the arbitral tribunal determined, without authorization, not to accept the counterclaims of Gren Company"

The Court held that after the arbitral tribunal is formed, it has the right to decide, during the trial, whether to accept the counterclaims of the Respondent. This contention of Gren Company does not have any legal basis and hence is not supported by the Court.

For the foregoing reasons, the reasons are untenable that Gren Company raises to reverse the arbitral award concerned, and in accordance with Article 60 of the Arbitration Law of the People's Republic of China, the ruling is rendered as follows:

The request of Gren Company to reverse the arbitral award (2007) Zhong Guo Mao Zhong Jing Cai Zi No. 0498 by China International Economic and Trade Arbitration Commission is rejected.

The case acceptance fee of RMB 400 is charged to the account of the Complainant Gren Company (already paid).

The ruling is final.

| | |
|---|---|
| Presiding Judge | Shen Xiaoqi |
| Acting Judge | Yao Ying |
| Acting Judge | Hu Jun |

This is an exact copy of the original

September 17, 2008

Clerk                    Jia Shen

<u>Translation</u>

## NOTARIAL CERTIFICATE

(2008)H.D.Z.W.J.Z. No. 14008

This is to certify that the foregoing photocopy is the same as the original (2008) Er Zhong Min Te Zi No.08482 Civil Ruling for Shanghai Contake Chemicals Co., Ltd. and that the seal of Beijing No. 2 Intermediate People's Court affixed to the original copy is genuine.

WU Yu (Seal)

Notary Public

The People's Republic of China

Shanghai Oriental Notary Public Office

(Seal)

Dated: November 27, 2008

# 公　　证　　书

(2008)沪东证外经字第 14009 号

　　兹证明前面的英文译本内容与上海康泰生化科技有限公司的(2008)沪东证外经字第 14008 号公证书中文原本相符。

　　　　中华人民共和国上海市东方公证处

公　证　员　

二〇〇八年十一月二十七日

<u>Translation</u>

NOTARIAL CERTIFICATE

(2008)H.D.Z.W.J.Z. No. 14009

This is to certify that the foregoing English version is true and faithful to the original Notarial Certificate (2008) H.D.Z.W.J.Z. No. 14008 in Chinese for Shanghai Contake Chemicals Co., Ltd..

WU Yu (Seal)
Notary Public

The People's Republic of China
Shanghai Oriental Notary Public Office
(Seal)

Dated: November 27, 2008